# UNITED STATES DISTRICT AND BANKRUPTCY COURTS

# FOR THE DISTRICT OF COLUMBIA

Sophia Young,
15412 Rosemont Manor Drive
Haymarket, VA 20169
202.510.5992
      Plaintiff (Complainant),

          vs.

Kevin McAleenan, Acting Secretary
U.S. Department of Homeland Security
Washington, DC,
      Agency (Defendant)

Case: 1:19-cv-03811    JURY DEMAND
Assigned To : Jackson, Ketanji Brown
Assign. Date : 12/23/2019
Description: Employ. Discrim. (H-DECK)

# COMPLAINT

**The U.S. Department of Homeland Security (DHS) discriminated against Complainant and subjected her to a hostile work environment on the basis of race (African American), age (YOB: 1965), disability (orthopedic and mental), retaliation and reprisal (prior EEO activity in 2009, 2013, 2014 and 2015; Case numbers: HSHQ09008063, HSHQ018552013, HSHQ018892014, HSHQ247512015, EEOC No.: 570-2019-00173X, Agency No.: HSHQ024242017) when:**

1. On June 2, 2017, management denied Complainant Reasonable Accommodation request for 100 percent telework (*even though Complainant was granted the opportunity to telework 80% based on a previous doctor's recommendation*), resulting in a myocardial infarction (heart-attack) on May 15, 2019, in which the Complainant had to undergo stent placement on three heart arties - Complainant's heart attack in May 2019 was a direct result from the Agency denying Complainant 80-100% Telework as a Reasonable Accommodation from

- 1 -

May 2017 through October 2017 and again in January 2018. Agency denied Complainant's request and held fast that Complainant could only Telework 50% of the time based on the Agency Telework policy. The action denied to Complainant based on doctor's strong recommendation for an 80-100% Telework or detail out of her current office environment as a Reasonable Accommodation in order to schedule medical appointments appropriately and address medical issues due to depression, anxiety, workplace stress, gastrointestinal issues, pain in arms and neck, hypertonic muscles, loss of self-esteem, weight gain, hair loss, difficulty sleeping, tearfulness, dizziness, and chest pains. Disability discrimination occurs when an employer or other entity covered by the Americans with Disabilities Act, as amended, or the Rehabilitation Act, as amended, treats a qualified individual with a disability who is an employee or applicant unfavorably because she has a disability. Learn more about the Act at ADA at 25. Disability discrimination also occurs when a covered employer or other entity treats an applicant or employee less favorably because she has a history of a disability (such as cancer that is controlled or in remission) or because she is believed to have a physical or mental impairment that is not transitory (lasting or expected to last six months or less) and minor (even if she does not have such an impairment). The law requires an employer to provide reasonable accommodation to an employee or job applicant with a disability, unless doing so would cause significant difficulty or expense for the employer ("undue hardship").

2.    From June through November 2017, management sent Complainant emails which were intended to bully, intimidate, abuse, and coerce Complainant. Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act

of 1990, (ADA). Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws. Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people. Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance.

3. On August 28 and November 11, 2017, Messrs. Register, Townsend, and Downing discriminated against Complainant based upon reasons of disability when she was denied the opportunity to deploy to the Hurricane Harvey disaster site as a Surge Capacity Force member under the Federal Emergency Management Agency (FEMA), stating Complainant's denial was based on her disability and her request for Reasonable Accommodations. The ADA requires employers to provide reasonable accommodations so that employees with disabilities can enjoy the "benefits and privileges of employment" equal to those enjoyed by similarly-situated

employees without disabilities. If an employee with a disability needs a reasonable accommodation in order to gain access to, and have an equal opportunity to participate in, these benefits and privileges, then the employer must provide the accommodation unless it can show undue hardship.

4. On September 7, 2017, Messrs. Register, Townsend, and Downing denied Complainant a detail to the FEMA JF03 External Affairs Office;

5. On January 6, 2018, Complainant was denied to continue 80-100% Telework through Reasonable Accommodation by Larry Register and was told to resume a 50% Telework Schedule effective January 8, 2018;

6. In August 2018, Complainant was denied a training opportunity to attend the Blacks in Government Conference in New Orleans by Larry Register, Wade Townsend and Barry Downing;

7. From October 24, 2018 through October 31, 2018, Complainant was retaliated against when given a poor performance rating by Larry Register, Wade Townsend, and Barry Downing; which strongly appeared as the lowest numerical rating out of all the employees within BSS. When Complainant was rated at 0.5 percentage points lower (3.66) for her 2018 Performance Appraisal than her 2017 Performance Appraisal (4.16), she addressed Larry Register on the subject matter. Larry Register, Wade Townsend and Barry Downing addressed the written errors in the Performance Appraisal but failed to adjust the appraisal scoring to a rate commensurate

with the written appraisal; Management rated Complainant "low" for her 2017 annual performance appraisal. The EEO laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment. Asserting these EEO rights is called "protected activity," and it can take many forms.  For example, it is unlawful to retaliate against applicants or employees for: filing or being a witness in an EEO charge, complaint, investigation, or lawsuit, communicating with a supervisor or manager about employment discrimination, including harassment.....Depending on the facts, it could be retaliation if an employer acts because of the employee's EEO activity to: reprimand the employee or give a performance evaluation that is lower than it should be.....

8.   On November 28, 2018, Complainant was given a FY 19 Performance Plan with goals from Larry Register and Barry Downing that were incorrectly aligned and failed to allow Complainant to receive a rating higher than achieved expectations and/or supply performance goals that aligned with Complainant's roles and responsibilities. Complainant addressed these issues with Larry Register and Barry Downing and to date, the 2019 Performance Plan and goals have not been changed and the rating period ends on October 31, 2019;

9.   In March 2019, due to health concerns and to offset stress factors in the workplace, Complainant was denied the opportunity to increase her Telework Schedule to every Thursday by Larry Register. Complainant was forced to use leave every other Thursday beginning March 21, 2019 through May 30, 2019 even while being asked to work from home on those dates;

10. On May 14, 2019, while in the office Complainant was suffering with severe chest pains and informed Larry Register about her illness. Larry Register did not acknowledge or view Complainant's situation as serious and denied any opportunity to work from home;

11. On May 15, 2019, while in the office Complainant continued to suffer severe chest pains and without knowing was suffering a cardio myopic infarction (heart attack). Complainant left the office and went to the doctors and less than 3 hours later, Complainant was undergoing angioplasty/stent placement to three of her arteries. Complainant was informed that she had high blood pressure and plaque build-up due to chronic stress which causes dangerous changes to atherosclerotic plaques; Complainant has been informed that due to high stress levels a plaque build-up caused the inner walls of her blood vessels to become sticky; then, inflammatory cells, lipoproteins, and calcium, traveled into her bloodstream and mix with the plaque - resulting in blocked arteries.

12. Complainant was unlawfully being denied 80-100% Telework under a Reasonable Accommodations from May 2017 through January 2018, Complainant was diagnosed with Coronary artery disease, also called coronary heart disease and had to undergo angioplasty also known as stent placement to three of her arteries.

13. On May 16, 2019, Complainant was originally scheduled for leave and reminded Larry Register. While in the hospital recovering from stent placement, Complainant informed Larry Register that she was going to use the day for rest and recovering. Mr. Register's response to Complainant was "we really need your help today;"

14. On August 27, 2019, Complainant was retaliated against when orally reprimanded by Larry Register, Rex Curtain, Tommy Brown, Sue Armstrong and Jackie Johnson based on her email response to Jennifer Waites, which only Jennifer Waites and Rex Curtain deemed it as unprofessional based on 5 words sporadically in the email being capitalized and viewed as "screaming." Complainant was under extreme pressure from ISCD and BSS management to procurement deadlines and expressed that the capitalized words only demonstrated the importance of meeting the procurement deadlines and not as a means to yell.  Retaliation occurs when an employer acts because of the employee's EEO activity or prior EEO activity by: increase scrutiny and making the person's work more difficult (for example, punishing an employee…).

15. On August 27, 2019, Rex Curtain ordered Larry Register to counsel Complainant based on the contents of the email as Mr. Curtain believed the capitalized verbiage impacted and/or hindered a "backroom" procurement deal request and or arrangement between him and ISD Budget and Procurement managers were trying to accomplish with Jennifer Waites; in which Complainant knew nothing about.

16. On August 27, 2019, Rex Curtain sent an email to Larry Register, Tommy Brown, Sue Armstrong and Jackie Johnson in reference to Complainant. The email from Rex Curtain stated, "*As you are likely aware, this is a direct result of not properly counseling/ documenting behavior like this in the past. One of three things happen when the employee is properly coached/documented: (1) they improve, (2) they quit; or (3) they are asked to leave.*" Complainant views this as a form of workplace bullying and retaliation due to existing and prior

EEO activity, which occurs when an employer acts because of the employee's EEO activity by reprimanding the employee, engage in verbal or physical abuse, threaten to make, or actually make reports, increase scrutiny; make the person's work more difficult.

17. On August 28, 2019, during a mandatory Strategic and Resource meeting, Rex Curtain made a statement directed at Complainant using the analogy of a bump in the road. Mr. Curtain stated, "yesterday (August 27, 2019) we had some negativity - and it is similar to having sh*t in the trunk of your car and you go over a bump in the road..... " Complainant views this as a form of workplace bullying and retaliation due to existing and prior EEO activity, which occurs when an employer acts because of the employee's EEO activity by reprimanding the employee, engage in verbal or physical abuse, threaten to make, or actually make reports, increase scrutiny; make the person's work more difficult.

18. From August 27, 2018 - September 11, 2019, Rex Curtain, Sue Armstrong, Tommy Brown, Larry Register, Greg Carnavele, Jennifer Waites and Reginald Baker continued to harass Complainant regarding the August 27, 2019 email. On September 11, 2019, after being ordered by Rex Curtain. Complainant was orally counseled again by Larry Register and Reginald Baker;

19. After the September 11, 2019 meeting with Mr. Register and Baker – complainant suffered a set-back medically and was unable to control blood pressure and stressors in her body. Complainant was undergoing cardiopulmonary rehabilitation and was not able to receive ample medical treatment due to inflated blood pressure. Complainant experienced this setback for more than 7 days.

**The U.S. Department of Homeland Security (DHS) discriminated against Complainant and subjected her to harassment and a hostile work environment based on reprisal (prior EEO activity) and disparate treatment when:**

20. On February 20, 2014, Complainant was instructed to complete paperwork to undergo a security investigation to change her position description from Program Analyst Contracts and Acquisition Advisor – when others who change positions was not required;

21. On July 16, 2014, Complainant received a lower performance rating for Fiscal Year 2014 than Fiscal Year 2013, without explanation – when others performing less received higher ratings;

22. On July 18, 2014, Complainant was denied the opportunity to attend a Blacks in Government conference-when others on her team were allowed to attend – Complainant has since been denied this opportunity on 6 different occasions when white males and females are allowed to attend conferences without questions and/or a thorough approval process;

23. On July 31, 2014, Complainant was denied situational telework even when OPM highly recommended agencies allow their employees to telework from home due to the African National Conference held with the Obama White House;

24. On August 11, 2014, Complainant received two (2) different performance plans for FY 2015; and no sufficient explanation was provided;

25. On August 20, 2014, Complainant receive a Letter of Counseling – based on false allegations by her supervisor;

26. On May 14, 2015, Complainant's supervisor instructed Complainant to report to the office on May 15, 2015, which was her regularly scheduled telework day; even when Complainant informed she was undergoing emotional hardship due to the unexpected death of her Aunt – when others on her team where allowed to take leave, telework and use other methods of work life balance in order not to come into the office on May 15, 2015;

27. On May 18, 2015, the Agency by and through another supervisor, subjected Complainant to heightened scrutiny by questioning her reasons for requesting to take annual leave;

28. On May 18, 2015, the Agency by and through another supervisor, subjected Complainant to heightened scrutiny by questioning if she worked 8 hours on May 18, 2015;

29. On June 16, 2015, the Agency by and through her supervisor, failed to approve Complainant's request to take leave;

30. On June 24, 2015, the Agency by and through her supervisor emailed Complainant concerning a 50% attendance policy and erroneously stated that Complainant was AWOL for the day;

31. On July 8, 2015, issued Complainant a 10-day suspension in retaliation for her prior EEO activity; Complainant's supervisor made false statements about her and management upheld the suspension based on those false accusations;

**Harassment** is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).  Harassment is unwelcome conduct that is based on race, color, religion, sex (including pregnancy), national origin, age (40 or older), disability or genetic information. Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws. Petty slights, annoyances, and isolated incidents (unless extremely serious) will not rise to the level of illegality. To be unlawful, the conduct must create a work environment that would be intimidating, hostile, or offensive to reasonable people. Offensive conduct may include, but is not limited to, offensive jokes, slurs, epithets or name calling, physical assaults or threats, intimidation, ridicule or mockery, insults or put-downs, offensive objects or pictures, and interference with work performance. Harassment can occur in a variety of circumstances, including, but not limited to, the following: the harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee, the victim

- 11 -

does not have to be the person harassed, but can be anyone affected by the offensive conduct; and unlawful harassment may occur without economic injury to, or discharge of, the victim.

**Retaliation.** The EEO laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment. Asserting these EEO rights is called "protected activity," and it can take many forms. For example, it is unlawful to retaliate against applicants or employees for: filing or being a witness in an EEO charge, complaint, investigation, or lawsuit, communicating with a supervisor or manager about employment discrimination, including harassment, answering questions during an employer investigation of alleged harassment; refusing to follow orders that would result in discrimination, resisting sexual advances, or intervening to protect others, requesting accommodation of a disability or for a religious practice, asking managers or co-workers about salary information to uncover potentially discriminatory wages. Participating in a complaint process is protected from retaliation under all circumstances. Other acts to oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEO laws, even if he or she did not use legal terminology to describe it. An employer is not allowed to do anything in response to EEO activity that would discourage someone from resisting or complaining about future discrimination. For example, depending on the facts, it could be retaliation if an employer acts because of the employee's EEO activity to: reprimand the employee or give a performance evaluation that is lower than it should be; transfer the employee to a less desirable position; engage in verbal or physical abuse; threaten to make, or actually make reports to authorities (such as reporting immigration status or contacting the police);

increase scrutiny; spread false rumors, treat a family member negatively (for example, cancel a contract with the person's spouse); or make the person's work more difficult (for example, punishing an employee for an EEO complaint by purposefully changing his work schedule to conflict with family responsibilities).

. **The U.S. Department of Homeland Security (DHS) discriminated against Complainant based on race, age, retaliation and reprisal (prior EEO activity) when:**

32. During the Agency EEO investigation under Case #: HS-HQ-01855-2013, where Complainant was denied on seven (7) different occasions the opportunity to be promoted from the GS-13 level to the GS-14 level; and each position was given to a white female under the age of 40; and/or a white male under the age of 40.  A Declaration provided by an Agency employee, when asked: *"Do you have any reason to believe that ISCD management officials discriminated against the Complainant because of her race or age when she was not selected for the positions listed under Claim 2?  If yes, do you have evidence of discrimination? Please explain your answer."* The Agency employee answered" *Since I lack credible evidence to support this behavior, I cannot confirm whether the Complainant was discriminated against because of her race or age; despite, some management officials rumored and labeled her as a "troublemaker" and/or "bad apple";*

33. On November 5, 2015, the Agency instructed Complainant to perform duties at the GS-14 level that exceeded her job description at the GS-13 level;

- 13 -

34. On July 10, 2014, Complainant was not selected for the position of Special Assistant advertised under Vacancy Announcement Number #FS-1104899-JL14, because Complainant was an African American (race) female over the age of 40 (age); and had previously asked management in a Town Hall discussion – "what they plan to do about African Americans being promoted above the GS-13 level and in leadership roles (retaliation)" – the position was given to a white female under the age of 40; and

35. On August 12, 2014, Complainant was not selected for the position of Supervisory Management & Program Analyst advertised under VAN FS-1125528-AC14, because Complainant was an African American (race) female over the age of 40 (age); and had previously asked management in a Town Hall discussion – "what they plan to do about African Americans being promoted above the GS-13 level and in leadership roles (retaliation)" – the position was given to a white female under the age of 40 who Complainant had trained.

**AGE.** Age discrimination involves treating an applicant or employee less favorably because of his or her age. The Age Discrimination in Employment Act (ADEA) forbids age discrimination against people who are age 40 or older. It does not protect workers under the age of 40, although some states have laws that protect younger workers from age discrimination. It is not illegal for an employer or other covered entity to favor an older worker over a younger one, even if both workers are age 40 or older. Discrimination can occur when the victim and the person who inflicted the discrimination are both over 40. The law prohibits discrimination in any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, benefits, and any other term or condition of employment. It is unlawful to harass a

- 14 -

person because of his or her age.  Harassment can include, for example, offensive or derogatory remarks about a person's age. Although the law doesn't prohibit simple teasing, offhand comments, or isolated incidents that aren't very serious, harassment is illegal when it is so frequent or severe that it creates a hostile or offensive work environment or when it results in an adverse employment decision (such as the victim being fired or demoted).  The harasser can be the victim's supervisor, a supervisor in another area, a co-worker, or someone who is not an employee of the employer, such as a client or customer.

**Race/Color Discrimination.** Race discrimination involves treating someone (an applicant or employee) unfavorably because he/she is of a certain race or because of personal characteristics associated with race (such as hair texture, skin color, or certain facial features). Color discrimination involves treating someone unfavorably because of skin color complexion. Race/color discrimination also can involve treating someone unfavorably because the person is married to (or associated with) a person of a certain race or color. Discrimination can occur when the victim and the person who inflicted the discrimination are the same race or color. The law forbids discrimination when it comes to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, fringe benefits, and any other term or condition of employment. It is unlawful to harass a person because of that person's race or color.  Harassment can include, for example, racial slurs, offensive or derogatory remarks about a person's race or color, or the display of racially-offensive symbols. Although the law doesn't prohibit simple teasing, offhand comments, or isolated incidents that are not very serious, harassment is illegal when it is so frequent or severe that it creates a hostile or offensive work environment or when it results in an adverse employment decision (such as the victim being fired or demoted). The

harasser can be the victim's supervisor, a supervisor in another area, a co-worker, or someone who is not an employee of the employer, such as a client or customer.  An employment policy or practice that applies to everyone, regardless of race or color, can be illegal if it has a negative impact on the employment of people of a particular race or color and is not job-related and necessary to the operation of the business.

**Retaliation.**  The EEO laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment.  Asserting these EEO rights is called "protected activity," and it can take many forms.  For example, it is unlawful to retaliate against applicants or employees for: filing or being a witness in an EEO charge, complaint, investigation, or lawsuit communicating with a supervisor or manager about employment discrimination, including harassment, answering questions during an employer investigation of alleged harassment, refusing to follow orders that would result in discrimination resisting sexual advances, or intervening to protect others, requesting accommodation of a disability or for a religious practice, asking managers or co-workers about salary information to uncover potentially discriminatory wages.  Participating in a complaint process is protected from retaliation under all circumstances. Other acts to oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEO laws, even if he or she did not use legal terminology to describe it.  An employer is not allowed to do anything in response to EEO activity that would discourage someone from resisting or complaining about future discrimination.  For example, depending on the facts, it could be retaliation if an employer acts because of the employee's EEO activity to: reprimand the employee or give a performance evaluation that is lower than it should be;

transfer the employee to a less desirable position; engage in verbal or physical abuse; threaten to make, or actually make reports to authorities (such as reporting immigration status or contacting the police); increase scrutiny; spread false rumors, treat a family member negatively (for example, cancel a contract with the person's spouse); or make the person's work more difficult (for example, punishing an employee for an EEO complaint by purposefully changing his work schedule to conflict with family responsibilities).

**TRIAL BY JURY**

Complainant requests a trial by jury on the claims above which has undergone the formal EEO process – More than 180 days have passed from the day Complainant filed her complaint and the agency or the EEOC has not issued a decision and no appeal has been filed nor has the Agency tried to settle this matter. In addition, 90 days has not passed since Complainant received the agency's decision on several claims and no appeal has been filed nor has the Agency tried to settle this matter. Based on Rule 38, Complainant has the right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by an applicable statute—is preserved to the parties inviolate. DEMAND. On any issue triable of right by a jury, a party may demand a jury trial by: (1) serving the other parties with a written demand—which may be included in a pleading— no later than 14 days after the last pleading directed to the issue is served; and (2) filing the demand in accordance with Rule 5(d). In its demand, a party may specify the issues that it wishes to have tried by a jury; otherwise, it is considered to have demanded a jury trial on all the issues so triable. If the party has demanded a jury trial on only some issues, any other party may—within 14 days after being served with the demand or within

a shorter time ordered by the court—serve a demand for a jury trial on any other or all factual issues triable by jury.

## PUNITIVE DAMAGES

The conduct of the Agency described above is outrageous. The Agency's conduct demonstrates a reckless disregard for human life and a conscious disregard for employees based on their race and retaliation, reprisal and disparate treatment for acts of prior EEO activity. The acts and omissions described above were willful and performed with actual or implied malice; pecuniary and non-pecuniary damages are therefore appropriate and should be imposed in this instance.

## PECUNIARY AND NON-PECUNIARY RELIEF

WHEREFORE, Complainant's respectfully pray for a judgment against the Agency for: Complainant has tried to engage in good-faith with diligent efforts to settle this matter. Complainant's settlement offer to settle EEOC Case No. 570-2019-00173X (Agency No. HS-HQ-02424-2017; HSHQ018892014 and HSHQ247512015 – racial and age discrimination, unlawful denial of Reasonable Accommodations, retaliation and reprisal, denied training, denied detail opportunities, workplace bullying through emails, hostile work environment, denied SCF duties during disasters, and disparate treatment). The agency has failed to act in good faith when it made no attempt to individually assess the Complainant's limitations and/or explore possible accommodations; even after being advised by her medical professionals.  Complainant is seeking the following relief:

1. Compensatory damages in the amount of $255,525.28. This includes pecuniary and

nonpecuniary damages. Complainant suffered a heart attack while on the job and had to undergo angioplasty surgery/stent placement in May 2019. Complainant has incurred medical debt as a result of the heart attack in May totaling $107,525.28;

2.   Previous medical debt prior to Complainant's heart attack in May totals $7,474.72; $10,525.28 for future medical appointments (gastro and hypertonic muscles in shoulder due to stress resulting in C4/C5 disk bulge); $5,000.00 for medical prescriptions; $25,000.00 to address other financial hardships such as attorney fees from previous EEO cases due to these incidents; $5,000.00 for backpack wrongful suspension; and $95,000.00 for mental, emotional and spiritual anguish;

3.   Complainant's heart attack in May 2019 was a direct result from the Agency denying Complainant 80-100% Telework as a Reasonable Accommodation from May 2017 through October 2017 and again in January 2018. Denying Complainant 80-100% Telework as a Reasonable Accommodation in order to address medical issues due to depression, anxiety, workplace stress, gastrointestinal issues, pain in arms and neck, hypertonic muscles, loss of self-esteem, weight gain, hair loss, difficulty sleeping, tearfulness, dizziness, and chest pains has caused even greater medical harm and financial hardships;

4. Complainant still needs to undergo medical procedures in order to address gastrointestinal issues and hypertonic muscles. Since Complainant is on medication (blood thinners to prevent future heart attacks for 1 year); she cannot undergo any procedures which may increase or cause excessive bleeding;

5. As a direct result of the Agency denying Complainant's request for Reasonable Accommodations from May 2017 to October 2017, Complainant was unable to adequately schedule medical appointments to keep pace with failing health issues brought on by workplace stressors – Complainant was unable to receive adequate medical care – which may have prevented the heart attack suffered in May 2019; and

6. Cease all future harassment and acts of retaliation as Complainant is still being harassed and retaliated by the Agency – with the most recent incident being August 2019 and September 11, 2019 by Rex Curtain, Jennifer Waites, Larry Register, Reginald Baker, Tommy Brown, Sue Armstrong, and Greg Carnavele. On September 11, 2019 Complainant was orally counseled by Larry Register and Reginald at the order of Rex Curtain, Sue Armstrong, Tommy Brown and Greg Carnavele (none are Complainant's 1st or 2nd line supervisor) due to what was coined an unprofessional email because all caps was used in 5 words, when the Caps placed in the email simply denoted the importance of getting the task completed due to management requests and other competing and extraneous deadlines.

**CERTIFICATE OF SERVICE**

I hereby certify that I am submitting this request for Civil Suit to the U.S. District Court on on December 23, 2019:

Respectfully submitted,

Sophia G. Young
15412 Rosemont Manor Drive
Haymarket, VA 20169
Cell: 202-253-7798
Home: 703-510-5992

Email: Sophia.young@cisa.dhs.gov

- 21 -